USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIDEL A. ZAVALA ROMERO,

                        Petitioner,

            -against-

KRISTI NOEM et al.,

                     Respondents.

26-CV-01884 (MMG)

**<u>OPINION & ORDER</u>**

MARGARET M. GARNETT, United States District Judge:

On March 5, 2026, Petitioner Fidel A. Zavala Romero, a noncitizen, was arrested by Immigration and Customs Enforcement ("ICE") pursuant to a 2004 final order of removal. The final removal order issued after Petitioner failed to comply with a conditional order of voluntary removal. He now petitions for a writ of habeas corpus, asserting that his detention by Respondents—the Secretary of Homeland Security and "Officer Montgomery" (together, the "Government")—lacks a statutory basis and violates his right to due process. For the following reasons, the petition is DENIED.

## BACKGROUND

Petitioner is a native and citizen of El Salvador. Pet. ¶ 5. He entered the United States on August 10, 2003, without inspection and with no valid immigration documents. *Id.*; Dkt. No. 8-1. He was fifteen years old at the time. Pet. ¶ 5; Dkt. No. 8-3. Border patrol agents arrested him in Falfurrias, Texas, on August 14, 2003. Dkt. No. 8-3. That same day, the Government commenced removal proceedings by issuing Petitioner a Notice to Appear ("NTA"). *See* Dkt. No. 8-2. The NTA charged Petitioner as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), because he was an alien present in the United States without being admitted or paroled. *Id.* On August 30, 2003, the Government

1

released Petitioner on his own recognizance to the custody of his mother, subject to certain reporting and other conditions. *See* Dkt. No. 8-4 at 1.

On July 21, 2004, an Immigration Judge granted Petitioner voluntary departure, ordering Petitioner to depart the United States by November 17, 2024. *See* Dkt. No. 8-5 ("Voluntary Departure Order"). The Voluntary Departure Order provided that if Petitioner did not voluntarily depart by the stated deadline, the Voluntary Departure Order would be withdrawn without notice, and a removal order directing Petitioner's removal to El Salvador would become effective immediately. *Id.* at 1. Petitioner did not depart the United States in accordance with the Voluntary Departure Order. Pet. ¶ 6; Dkt. No. 7 ¶ 5.

Petitioner eventually moved to Long Island, where he works in landscaping. Pet. ¶ 8–9. He is married with two children who are United States citizens. *Id.* ¶ 8. He was granted Deferred Action for Childhood Arrivals ("DACA") in 2014, and renewed that status multiple times, but that status expired on December 18, 2021. *Id.* at ¶ 15. He states that he applied for a U-visa at some point, and his application is pending, Pet. ¶ 16, although his immigration records reflect no pending applications, motions, or petitions, at least as of July 31, 2024, Dkt. No. 8-6 at 2. He is on probation in connection with an alcohol-related driving offense, with one prior alcohol-related driving offense. *Id.*; Pet. ¶ 11.

On March 5, 2026, ICE detained Petitioner when he reported to probation in Mineola, New York. Pet. ¶ 13. Petitioner was initially sent to the Nassau County Correctional Center in East Meadow, New York. *Id.* ICE later transferred him to the Orange County Correctional Facility in Goshen, New York, where he remains in custody. *Id.*

Petitioner filed this Petition on March 6, 2026. *Id.* at 3. The Court issued an order to show cause on March 9, 2026, enjoining the Government from removing Petitioner, soliciting

briefs from the parties, and scheduling a hearing that took place on March 18, 2026. Dkt. No. 3. The Government filed a memorandum of law in opposition to the Petition on March 12, 2026. Dkt. No. 6 ("Opp."). Petitioner filed a letter in reply on March 16, 2026. Dkt. No. 9 ("Rep.").

## DISCUSSION

### I.    LEGAL STANDARD

Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

### II.    ANALYSIS

The Petition asserts three claims: (1) that Petitioner's "arrest was unlawful because it was made without probable cause to believe he is a flight risk"; (2) that Petitioner's "detention is unlawful because he is not subject to detention under 8 U.S.C. section 1225"; and (3) that Petitioner's "detention is unlawful because his detention is contrary to due process of law." *Id.* at 2. The Court will address each claim in turn.

#### A.    Legal Basis for Arrest

Petitioner's argument that his "arrest was unlawful because it was made without probable cause to believe he is a flight risk" is wholly inapposite. *See* Pet. ¶ 19. That argument appears to refer to the prerequisites for warrantless arrests provided in 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). But Petitioner's arrest was not warrantless. Rather, he was arrested pursuant to a Form I-205 warrant. *See* Dkt. No. 8-7. He does not dispute that fact, nor does he dispute the

3

validity of the warrant.  This claim is therefore without merit and cannot provide a basis for his release.

## B.  Statutory Basis for Detention

In challenging the statutory basis for his detention, Petitioner appears to have initially presumed that the Government would invoke 8 U.S.C. § 1225, and he summarily asserts that he is not subject to detention under that statute.  *See* Pet. at 2.  The Government maintains that Section 1225 is irrelevant, and Section 1231 instead applies since Petitioner is subject to a final order of removal.  Opp. at 7–8.  The Government is correct that Section 1231 controls the Court's analysis.  Pursuant to that analysis, the Court finds that Petitioner's detention is statutorily authorized.

### 1.    Section 1231 Governs Petitioner's Detention

"The detention of a noncitizen subject to a final order of removal is governed by 8 U.S.C. § 1231." *Lin v. Warden, Orange Cnty. Jail*, No. 25-CV-09039 (GHW), 2026 WL 412115, at *1 (S.D.N.Y. Feb. 13, 2026).  It is undisputed that Petitioner is subject to a final order of removal because he did not voluntarily depart the United States in accordance with the Voluntary Departure Order.  *See* Pet. ¶ 6; Dkt. No. 7 ¶ 5; *see also* 8 C.F.R. § 1241.1(f) ("[I]f an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure," the order of removal becomes final "upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days.").  It is also undisputed that Petitioner was arrested on a warrant issued pursuant to his final order of removal.  *See* Dkt. No. 8-7 (warrant of removal).  Accordingly, his detention is governed by Section 1231.

"Section 1231 establishes a 90-day 'removal period' within which the government must effectuate a removal order after it becomes final and during which the government 'shall' detain

4

the noncitizen until such removal." *Singh v. Francis*, No. 26-CV-00344 (OEM), 2026 WL 507890, at *2 (E.D.N.Y. Feb. 24, 2026).  The removal period begins on the latest of three dates set forth in Section 1231, including, as relevant here, "[t]he date the order of removal becomes administratively final."  8 U.S.C. § 1231(a)(1)(B)(i).  "After the 90-day removal period expires, section 1231(a)(6) provides that three classes of persons may be detained beyond the removal period," including, as relevant here, noncitizens who are "inadmissible."  *Gualpa-Mizhquiri v. Francis*, No. 26-CV-00156 (JAV), 2026 WL 396081, at *2 (S.D.N.Y. Feb. 12, 2026).

### 2.      Section 1231(a)(6) Authorized Petitioner's Detention

Petitioner asserts that his detention is unlawful because section 1231(a)(6) applies only to the "continuation of detention for individuals who cannot be removed and who have been detained longer than 6 months." Dkt. No. 9.  This erroneous and confusing argument appears to be a misapplication of the Supreme Court's decision in *Zadvydas v. Davis*, which provides that detention pursuant to Section 1231(a)(6) is presumptively reasonable for six months.  *See* 533 U.S. 678, 701 (2001).  Notwithstanding the error, Petitioner's ultimate argument—that Section 1231(a)(6) authorizes only the *continued* detention of noncitizens already in custody, rather than the new detention of noncitizens ordered removed—raises a salient point.  *See* Dkt. No. 9.  The question is whether Section 1231(a)(6) permits detention pursuant to a final order of removal where, as here, the inadmissible noncitizen was not detained during the 90-day removal period, and has been living in the United States since then, albeit largely without the permission or authorization of the United States.

Plaintiff cites *Diallo v. Joyce* to support his position that after the removal period expires, Section 1231(a)(6) authorizes only the *continued* detention of noncitizens, not the detention of noncitizens in the first instance.  *See* No. 25-CV-9909 (AS), 2025 WL 3718477, at *4 (S.D.N.Y. Dec. 23, 2025).  The petitioner in that case, Aissatou Diallo, was subject to an order of removal

but was never detained because she received a withholding of removal based on proof that she would be persecuted in her home country. *See id.* at *1. ICE arrested Diallo approximately 13 years later, detaining her indefinitely pending her removal to a yet-to-be-identified third country. *Id.* Judge Subramanian held that Diallo's detention lacked any statutory basis. He determined that Section 1231(a)(6) did not grant the government "a free-roaming right to arrest and detain people any time it sees fit." *Id.* at *2. Rather, it "provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period." *Id.* And "it provides that those subject to final orders of removal, but who aren't removed, will be released on supervision, and that the terms of their supervision and re-detention will be governed by regulation." *Id.* at 4. Judge Subramanian explicitly noted that "nothing in the Court's holding says that the government may not remove Diallo or that, if removal were *imminent*, the government could not briefly detain Diallo for purposes of effecting that removal," given that some form of detention may be "implicit in the concept of 'removal' itself." *Id.* Nevertheless, such circumstances did not exist in *Diallo* because the government had not shown whether removal was even possible given Diallo's withholding of removal, nor could it say when Diallo would be removed. *Id.*

Another recent case from this district, *Lin v. Francis*, departs from *Diallo*. *See* No. 25-CV-10001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025). Like Diallo, the petitioner in *Lin*, Yan Lin, had been charged with removability as an inadmissible noncitizen. *See id.* at *1. Unlike Diallo, Lin became subject to a final order of removal after he failed to appear at his removal hearing. *See id.* ICE arrested Lin approximately 12 years later based on a removal warrant issued pursuant to the final removal order. *Id.* at 2. Judge Engelmayer held that Section 1231(a)(6) authorized Lin's detention. He noted that Section 1231(a)(6) provides that

noncitizens subject to final removal orders "*may* be detained beyond the removal period and, if released, shall be subject to the terms of supervision in § 1231(a)(3)." *Id.* at 3. Lin's detention was thus lawful because he "was subject to a final removal order and, having not appeared at his removal hearing or since, had never been released by ICE subject to conditions of supervision." *Id.* at *3.

Judge Engelmayer also determined that "there is nothing in § 1231(a)(6) that textually required ICE to give advance notice before detaining a noncitizen pursuant to this provision." *Id.* at *4. Although "abruptly detain[ing] a noncitizen subject to a removal order . . . who had been released on conditions of supervision with which he or she had complied" may violate regulatory requirements, the "regulations ICE must follow in revoking a noncitizen's supervision do not apply to a noncitizen who has not been on supervision (and, on the record here, had been out of contact with ICE for well over a decade)." *Id.* (addressing, *inter alia*, 8 C.F.R. §§ 241.13, 241.14, 241.4, and 241.5).

Central to *Lin*'s holding was the understanding that Section 1231's 90-day removal period is "self-evidently addressed to noncitizens accessible to ICE." *Id.* at 4. Since Lin did not appear for his removal hearing, there was "no basis to treat him as having been accessible to ICE, such that it could have removed him during the ensuing 90 days." *Id.* Judge Engelmayer found no support for the "improbable proposition that—with [Lin's] not having appeared at his removal hearing or evidently had any contact in the ensuing 12 years with ICE—ICE was required either (1) to give him advance notice . . . before detaining him, or (2) to release him on supervisory conditions after it encountered him." *Id.* at 3. To the contrary, Judge Engelmayer cited several cases consistent with the holding that "the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the

[g]overnment's ability to detain Petitioner without notice for the purpose of enforcing that removal order . . . years later." *Id.* at 5 (quoting *Piao v. Lyons*, No. 25-CV-01725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025)).

Judge Subramanian later acknowledged *Lin* in a subsequent case involving the detention of a noncitizen who was subject to a decades-old final removal order and who was not previously detained or placed under an order of supervision. *See Chen v. Noem*, No. 26-CV-01109 (AS), 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11, 2026). He again determined that the government had no authority under Section 1231 to detain the petitioner. Adhering to his reasoning in *Diallo*, Judge Subramanian noted that *Lin* "involved the unique situation of an individual who was subject to a final order of removal after failing to attend his removal hearing and being out of contact with ICE since then, rendering him inaccessible to ICE." *Id.* Subsequently, Judge Vargas relied on *Lin* to decide a similar case, rejecting the petitioner's argument that his detention was unlawful "because he was arrested without notice . . . more than 90 days after his removal order became final." *Gualpa-Mizhquiri*, 2026 WL 396081, at *2 (S.D.N.Y. Feb. 12, 2026).

This case is directly analogous to *Lin*. Like Lin, Petitioner effectively received a final order of removal *in absentia* after he failed to comply with an immigration judge's order (in Petitioner's case, to voluntarily depart the United States). Consequently, Petitioner was inaccessible to ICE when he became subject to removal. Under such circumstances, the Court agrees with Judge Engelmayer that Section 1231 does not categorically bar the Government from detaining Petitioner in the first instance after the removal period expires.

The 90-day removal period provides a deadline for removing a noncitizen and, in combination with the rest of Section 1231, also limits the duration of a noncitizen's detention

pending removal. *See* 8 U.S.C.A. § 1231(a)(1)(A) (providing that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"); *id.* § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."); *id.* § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."). Section 1231(a)(6) raises the limit on the duration of detention where the noncitizen is inadmissible. *See id.* § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the removal period . . . ."). As Judge Engelmayer noted, the statutory text is naturally oriented toward situations where a noncitizen is detained upon the issuance of a final removal order—because such immediate detention is mandatory and therefore expected. But if immediate detention is impossible because the noncitizen has absconded, nothing in Section 1231 suggests that its limits on the duration of detention somehow alternatively operate as a deadline for <u>ever</u> arresting or detaining the inaccessible noncitizen. Petitioner advances the "improbable proposition" that Section 1231 rewards inadmissible noncitizens who manage to evade authorities for at least 90 days after entry of a final order of removal. *Lin*, 2025 WL 3751855, at *3. The better reading is that Section 1231(a)(6)'s plain text provides the Government with discretionary authority to take inadmissible noncitizens into custody after the initial removal period expires, particularly in cases, like this one, where the noncitizen was not initially detained during the removal period because he absconded or otherwise failed to comply with the directives of immigration authorities.

Furthermore, the Court notes that Petitioner's detention would be statutorily authorized even under *Diallo*'s interpretation of Section 1231. The Government indisputably has authority

9

to remove Petitioner, and the authority to remove necessarily implies the authority to briefly detain the subject for purposes of effecting the removal. *See Diallo*, 2025 WL 3718477, at *4. In this case, unlike in *Diallo*, there is no impediment to Petitioner's removal to his country of origin.[1] Petitioner filed the Petition only one day after he was detained. From the present record, there is no reason to believe his detention was for any purpose other than his imminent and lawful removal to his country of origin.

### C. Due Process

Petitioner's detention is thus statutorily authorized, but it still must comport with applicable due process guarantees. *See Zadvydas*, 533 U.S. at 693–94. Aside from the meritless arguments regarding prerequisites for a warrantless arrest, Petitioner's barebones submissions do not assert any specific authority or theory to support a due process claim. He merely objects that he was detained "without any notice nor opportunity to be heard." Rep. at 1. Petitioner's due process claim cannot succeed under the theory that an administrative agency must follow its own established rules and procedures, given "the Court's finding that ICE—on the record at hand— did not breach any statute or regulation." *Lin*, 2025 WL 3751855, at *5 (rejecting due process claim under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)). Nor can it succeed under the theory that the duration of his detention exceeds the period reasonably necessary to effectuate his removal since he has been detained for less than two weeks, and his removal is reasonably foreseeable. *See id.* (rejecting due process claim under *Zadvydas*, 533 U.S. 678). More broadly, in accordance with the opinions of Judges Engelmayer and Vargas in

---

[1] At the conference on March 18, 2026, the Government represented that it had obtained all necessary travel documents for Petitioner's removal to his country of origin and that the only impediment to Petitioner's removal was this Court's order dated March 9, 2026. *See* Dkt. No. 3 (restraining the Government from "transferring the Petitioner out of the Southern District of New York and, relatedly, the United States of America").

*Lin* and *Gualpa-Mizhquiri*, the Court finds that Petitioner has failed to establish that notice was required prior to his arrest and detention. *See id.*; *Gualpa-Mizhquiri*, 2026 WL 396081, at *2–3. To the extent that due process entitles Petitioner to judicial review of the lawfulness of his detention, he is receiving it via his habeas petition and this Court's review and determination of that petition.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is DENIED. The Clerk of Court is respectfully directed to CLOSE this case. Because the case is closed, the order at Dkt. No. 3 enjoining Petitioner's removal or transfer is no longer in effect.

Dated: March 19, 2026
        New York, New York

                                    SO ORDERED.

                                    _____
                                    MARGARET M. GARNETT
                                    United States District Judge

11